**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* | ) ) ) |
| **[UNDER SEAL]** | ) ) ) |
| **Plaintiffs,** | ) ) ) |
| **v.** | ) ) |
| **[UNDER SEAL]** **[UNDER SEAL]** | ) ) ) |
| **Defendants.** | ) ) ) ) |

Civil Action No. 1:20cv1215-LMB/IDD

**FILED UNDER SEAL pursuant to of 31 U.S.C. § 3730(b)(2)**

**Complaint for Violations of 31 U.S.C. § 3729 *et seq*. (The False Claims Act).**



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* ) | |
| ) | |
| **TREVOR RICE** ) | |
| **13220 Lazy Glen Lane** ) | |
| **Herndon, VA 20171** ) | |
| ) | Civil Action No. 1:20cv1215-LMB/IDD |
| ) | |
| *Plaintiffs,* ) | **Complaint for Violations of 31 U.S.C. § 3729 *et seq*. (The False Claims Act).** |
| ) | |
| **v.** ) | |
| ) | **FILED UNDER SEAL pursuant to 31 U.S.C. § 3730(b)(2).** |
| **LEWIS-PRICE & ASSOCIATES, INC.** ) | |
| **8200 Greensboro Drive, Suite 805** ) | |
| **McLean, VA 22102** ) | **Jury Trial Demanded** |
| ) | |
| **AND** ) | |
| ) | |
| **KEN COLEMAN** ) | |
| **5122 Ballycastle Circle** ) | |
| **Alexandria, VA 22315** ) | |
| ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

1

## INTRODUCTION

1.      *Qui tam* relator Trevor Rice, by and through counsel, on behalf of the United States of America, files this complaint against Lewis-Price & Associates, Inc. and its owner and CEO Ken Coleman to recover damages, penalties, and attorneys' fees for violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, committed by the Defendants.

2.      Lewis-Price, at the direction of its owner and CEO Ken Coleman, applied for and received Paycheck Protection Program funds even though it was not financially impacted by the pandemic and it did not need the money. Additionally, Defendants included improper payroll expenses in the loan application. Once Lewis-Price received the loan, Coleman commingled and improperly spent the funds on non-payroll and non-qualifying business expenses, including issuing payments to his friends and family and lavish payments on non-busines related luxuries. Lewis-Price then falsely certified that it had properly used the funds consistent with the PPP requirements when it applied for loan forgiveness.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this judicial district.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the illegal acts detailed in this complaint occurred within this judicial district.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

## PARTIES

### I.     Defendant Lewis-Price & Associates, Inc.

5.      Lewis-Price & Associates, Inc. ("Lewis-Price") is a government contractor headquartered in McLean, Virginia.

6.      Lewis-Price is owned by Ken Coleman.

7.      Lewis-Price has approximately 115 employees.

8.      Lewis-Price staffs permanent employees on existing contracts with the government.

9.      Lewis-Price employees work on government projects at government sites.

10.     Lewis-Price receives money from the government for these assignments and then Lewis-Price pays payroll for its employees working on the government projects.

11.     The majority of Lewis-Price's revenue stream comes from contracts with three government agencies: Department of Defense, United States Citizenship and Immigration Services, and Customs and Border Patrol.

### II.     Defendant Ken Coleman

12.     Ken Coleman is the founder and CEO of Lewis-Price and directs the day to day operations of the company.

13.     Coleman is a resident of Alexandria, VA.

### III.     Relator Trevor Rice

14.     Relator Trevor Rice earned a Bachelor's degree from the College of William and Mary.

15.     Rice earned a certificate of Accounting from the University of Virginia.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

3

16.     Rice is a Certified Public Accountant ("CPA") as well as a certified Project Management Profession ("PMP").

17.     Rice has 25 years of experience in government contracting, specifically in finance and accounting roles.

18.     Rice has worked in accounting and finance roles for various corporations including Northrop Grumman and CACI (originally California Analysis Center, Inc.).

19.     Rice began working for Lewis-Price in or around November 2019 as an Accountant.

20.     Rice is a resident of Fairfax County, VA.

21.     Through his employment at Lewis-Price, Rice has firsthand knowledge of Defendants' fraudulent business practices.

22.     Specifically, as an Accountant for Lewis-Price, Rice has firsthand knowledge of Lewis-Price's financial records Lewis-Price's PPP loan application and request for forgiveness.

## BACKGROUND

### I.      Paycheck Protection Program Overview

23.     The Paycheck Protection Program ("PPP") is a federal loan program designed in part to provide a direct incentive for employers to keep employees on payroll during the economic crisis caused by the COVID-19 pandemic. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, tit. I, § 1102 (2020).

24.     The PPP was established as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

25.     The CARES Act was signed into law on March 27, 2020.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

4

26.     The CARES Act is a $2 trillion economic relief package designed to provide swift and direct economic assistance for individuals and businesses due to the economic and financial effects of the COVID-19 pandemic.

27.     The PPP is administered through the Small Business Administration ("SBA").

28.     Businesses seeking a PPP loan can apply through any existing SBA 7(a) lender, through a federally insured depository institution or credit union, or through a participating Farm Credit System institution. *Id.*

29.     The foregoing private institutions approve and authorize PPP loans, and then are reimbursed by the federal government. *Id.*

30.     When applying for the loan, a business must certify the reason it needs the loan are proper, and must provide an accounting statement of payroll and other acceptable costs in order to calculate the amount requested. *See Id.* at § 1106.

31.     Specifically, the business must certify that "current economic uncertainty makes [the] loan request necessary to support the ongoing operations of the [applicant]." *Id.* at § 1102 (G)(i).

32.     A business must make this certification in good faith, taking into account current business activity and ability to access other sources of liquidity sufficient to support ongoing operations in a manner that is not significantly detrimental to the business.

33.     Once a PPP loan is obtained, a business can file for full loan forgiveness, provided it adheres to the requirements set out in the CARES Act.

34.     In order to receive full PPP loan forgiveness, a business must adhere to the following requirements:

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

a. The business must use at least 60% of the loan on payroll expenses. The remaining portion of the loan can be spent on other qualifying costs, such as rent, utilities, and mortgage interest.

b. The business must spend the loan within 24 weeks of receiving it.

c. The business must have the same employee count when applying for full forgiveness as it did when it applied for the loan.

d. The business must not reduce employees' wages by more than 25% for all employees who earned less than $33,333 between March 1, 2019 and June 30, 2019, or earned $100,000 or less in 2019. *See Id.* at § 1102 (a); *see also* Paycheck Protection Program Flexibility Act, Pub. L. No. 116-142, § 3(b) (2020).

35.     To determine if a business reduced employees' salaries by more than 25%, the SBA compares the average annual salary or hourly wage, rather than the total wages amount.

36.     A business can reduce its workforce and still receive full PPP loan forgiveness if the reductions meet any of the following exceptions:

a. Employees who were laid off and were then re-offered employment declined to return to work;

b. Employees voluntarily resigned;

c. Employees were terminated with cause;

d. Employees requested and received a reduction in hours;

e. The business can document in good faith an inability to return to the same level of business activity as the business was operating at before February 15, 2020 due to compliance with federal agency requirements or guidance issued after March 1,

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

6

2020. *See* Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Forgiveness and Loan Review Procedures Interim Final Rules, 85 Fed. Reg. 38,308 (June 26, 2020).

37.     When applying for loan forgiveness, a business must submit documentation demonstrating that the loan was spent properly according to SBA guidelines.

38.     If a business knowingly makes false certifications on the PPP loan application and receives a PPP loan, then the business is in violation of the False Claims Act.

39.     If a business receives a PPP loan, submits a loan forgiveness application, and knowingly makes false certifications on the loan forgiveness application, then the business is in violation of the False Claims Act.

40.     At all times herein mentioned, Defendants had knowledge of the public policies expressed in the guidelines herein mentioned, and of the fact that they must comply with all applicable SBA guidelines in order to receive a PPP loan and to apply for full forgiveness of a PPP loan.

## II.     The False Claims Act

41.     The FCA, 31 U.S.C. § 3729(a)(1)(A), makes knowingly presenting or causing to be presented to the United States any false or fraudulent claim for payment a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of $11,181 – $22,363 per claim.

42.     The FCA, 31 U.S.C. § 3729(a)(1)(B), makes knowingly making, using, or causing to be used or made, a false record or statement to get a false or fraudulent claim paid or approved by the government a violation of federal law for which the United States may recover three times

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

7

the amount of the damages the government sustains and a civil monetary penalty of $11,181 – $22,363 per claim.

43.     The FCA, 31 U.S.C. § 3729(a)(1)(G), makes knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government a violation of federal law for which the United States may recover three times the amount of the damages the government sustains and a civil monetary penalty of $11,181 – $22,363 per claim.

44.     The 4th Circuit recognizes the material elements of fraud under the False Claims Act as "(1) [t]here was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999).

## FACTUAL ALLEGATIONS

### I.      General Overview of the Fraud

45.     Lewis-Price founder and CEO, Ken Coleman, funnels money from Lewis-Price's corporate bank account for his own personal expenses, as well as expenses for his family and friends.

46.     Lewis-Price is in violation of the False Claims Act because it applied for a PPP loan and falsely certified that "current economic uncertainty ma[de] [the] loan request necessary to support the ongoing operations of [Lewis-Price]."

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

8

47.     Additionally, Lewis-Price is in violation of the False Claims Act because it improperly included employee payroll expenses on its PPP application for individuals who were not Lewis-Price employees.

48.     Once Lewis-Price received the loan, Coleman used the loan money for personal, non-business-related expenses as opposed to payroll and other qualifying business expenses as required by the CARES Act.

49.     Lewis-Price then made false certifications to the government when it applied for full PPP loan forgiveness claiming that it had used the loan money for payroll and other qualifying business expenses as required.

**II.     Lewis-Price's Expenses & Expenditures**

50.     Lewis-Price's monthly payroll expenses for fiscal year ("FY") 2019 were approximately $800,000 per month for employees and approximately $291,500 per month for subcontractors, or $9,600,000 total in FY 2019 for employees and approximately $3,500,000 total in FY 2019 for subcontractors.

51.     Lewis-Price's monthly rent expense for office space is approximately $14,000 per month, or approximately $168,000 per year.

52.     Lewis-Price's monthly health insurance and benefits expense is approximately $55,000 per month, or approximately $660,000 per year.

53.     All totaled, it cost Lewis-Price approximately $14,000,000 in FY 2019 to operate.

54.     In FY 2019, Lewis-Price billed and received nearly $19,000,000 in government contracts.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

9

55.     Since its inception, Lewis-Price has received close to $80,000,000 in reimbursement for services provided on government contracts.

### III.     Additional Noteworthy Lewis-Price & Ken Coleman Expenditures

56.     Upon starting his position at Lewis-Price in or around November 2019, Relator Rice almost immediately began noticing accounting irregularities that have continued through his tenure at Lewis-Price.

57.     As founder and CEO, Ken Coleman has control over Lewis-Price's single operating corporate bank account ("the company account"). The company account is maintained at Eagle Bank.

58.     Coleman controls the company account with significant autonomy and uses the account to make payments for personal expenses and issue payments to family members.

59.     Coleman does not make any effort to return these payments to Lewis-Price.

60.     Coleman issues monthly checks from the company account to his father (Anthony Metcalfe), mother (Beverly Lewis), sister (Michelle Harbour), and brother (Walter Coleman), which in total amount to approximately $30,000 per month, or approximately $360,000 per year.

61.     Ken Coleman's brother, Walter Coleman, has been on Lewis-Price's payroll since in or around 2014.

62.     Walter Coleman does not regularly come into Lewis-Price's McLean office and does not regularly perform work for Lewis-Price.

63.     Ken Coleman issued Walter Coleman a $55,000 check from the company account on or about March 27, 2020.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

10

64.     Lewis-Price's then-CFO, Carolyn Johnson, told Rice that the $55,000 payment was intended to help Walter Coleman pay for a house.

65.     Ken Coleman issues payments from the company account to several personal friends in the form of gift cards and Cash App payments.

66.     Coleman pays approximately $250,000 per year from the company account for private jet rental services.

67.     Coleman expenses the private jet payments as accruals against Lewis-Price's general and administrative costs account ("G&A account").

68.     Coleman uses the pre-paid travel expenses as tax deductions.

69.     Coleman does not actually use the private jet service, and there is no business-related reason for the private jet service.

70.     Coleman pays approximately $250,000 per year from the company account for a suite at FedEx field.

71.     There is no business-related reason for Lewis-Price to pay for a FedEx field suite.

72.     The FedEx field suite payments are not tax deductible; Coleman, however, deducts the FedEx field suite payments on Lewis-Price's taxes.

73.     Coleman uses the company account to take his family and friends on vacations to Miami and Las Vegas, which he improperly designates as business expenses.

74.     In 2019, Coleman used the company account to pay himself approximately $65,000 in "consulting fees," which were in addition to his annual salary of approximately $240,000.

75.     Coleman issues approximately $75,000 per month from the G&A account to his family and friends, or approximately $900,000 per year.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

11

76.     These costs lower the profitability of the company and improperly lower Lewis-Price's corporate income tax.

77.     Half of the $75,000 that Coleman issues monthly from the G&A account to friends and family is designated as payments for "consultants." Coleman's friends and family who are receiving these payments do not act as consultants for Lewis-Price.

78.     The other half of the monthly $75,000 issued from the G&A account is issued via Cash App as "office expenses" or via credit card expenses that are also classified as business expenses.

79.     In total, on average, Coleman issues approximately $150,000 from the company account for personal expenses, or approximately $1,800,000 per year.

80.     Lewis-Price's G&A account expenses totaled approximately $1,165,000 over the past four years.

81.     Lewis-Price does not have, maintain records for, or seek to collect receipts for any payments expended from the G&A account.

82.     Coleman issues payments from the G&A account to a group of approximately thirteen "insiders" in the form of prepaid credit cards or "consultant" fees.

83.     Coleman did not send any of the thirteen "insiders" an Internal Revenue Service ("IRS") Form 1099 for FY 2019.

84.     These thirteen "insiders" are as follows:

    a.  Ricardo Molina

    b.  Andre Dunkley

    c.  Keith Rose

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

12

    d.  Sherman Mathis

    e.  Keiva Rose

    f.  Leah Martin

    g.  Billy Dixon

    h.  Aisha Drake

    i.  "Steven"

    j.  "Kauth"

    k.  "Spinner"

    l.  "Lennard"

    m. "Bond"

85.    Molina, Dunkley, Drake, and Keith Rose are Lewis-Price employees.

86.    Molina is Ken Coleman's boyfriend.

87.    Molina is on Lewis-Price's payroll.

88.    Molina has numerous Cash App withdrawals from the Lewis-Price G&A account.

89.    Dunkley is on Lewis-Price's payroll.

90.    Dunkley has numerous Cash App withdrawals from the Lewis-Price G&A account.

91.    Keith Rose is on Lewis-Price's payroll.

92.    Molina, Dunkley, and Keith Rose are on Lewis-Price's "social media team."

93.    Lewis-Price's social media team consists of at least seven individuals.

94.    Drake is Coleman's executive assistant.

95.    Drake's annual salary is approximately $115,000.

96.    Drake has received approximately $40,000 in bonuses in FY 2020.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

13

97.     Drake has numerous Cash App withdrawals from the Lewis-Price G&A account.

98.     Mathis, Martin, Dixon, Keiva Rose, "Steven", "Kauth", "Spinner", "Lennard", and "Bond" are not Lewis-Price employees.

99.     Coleman nonetheless included purported payroll expenses for all foregoing "insiders" on Lewis-Price's PPP application.

100.    Mathis is Coleman's physical fitness personal trainer.

101.    Coleman pays Mathis nearly $40,000 per year from the Lewis-Price G&A account to provide Coleman with personal training services.

102.    Keiva Rose has numerous Cash App withdrawals from the Lewis-Price G&A account.

103.    Martin has numerous Cash App withdrawals from the Lewis-Price G&A account.

104.    Coleman purchased Barrow Consulting Services, located at 10 G St. NE, Suite 600, Washington, D.C. 20002, from founder Carrie Ann Barrow.

105.    Barrow is listed on Lewis-Price's payroll.

106.    Barrow does not regularly come into Lewis-Price's McLean office.

107.    Barrow does not perform any services for Lewis-Price.

## IV.    Lewis-Price's PPP Loan

108.    On or about April 6, 2020, Lewis-Price submitted its PPP loan application, which was signed by Ken Coleman.

109.    In its PPP application, Lewis-Price improperly included the thirteen "insiders" as Lewis-Price employees.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

14

110.    On its PPP loan application, Lewis-Price and Coleman falsely certified that "current economic uncertainty ma[de] [the] loan request necessary to support the ongoing operations of [Lewis-Price]."

111.    Lewis-Price received a PPP loan of approximately $1,700,000 on or about April 29, 2020.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

15

 **Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

**CERTIFICATIONS AND AUTHORIZATIONS**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

**CERTIFICATIONS**

The authorized representative of the Applicant must certify in good faith to all of the below by initialing next to each one:

_KC_  The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_KC_  Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_KC_  The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_KC_  The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_KC_  I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_KC_  During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_KC_  I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_KC_  I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_Ken D. Coleman_                                          **04/06/2020**
Signature of Authorized Representative of Applicant          Date

**Ken Coleman**                                           **CEO**
Print Name                                               Title

SBA Form 2483 (04/20)                    2

[Lewis-Price's PPP Loan]

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

16



7815 Woodmont Avenue, Bethesda, MD 20814
301.986.1800 | TeleBank 1.800.364.8313

**LEWIS-PRICE & ASSOCIATES INC**
**8200 GREENSBORO DR SUITE 805**
**MCLEAN VA 22102-4925**

Last statement: March 31, 2020
This statement: April 30, 2020
Total days in statement period: 30

Page 1 of 11

( 0)

Direct inquiries to:
301-986-1800

EagleBank
7815 Woodmont Ave
Bethesda MD 20814

**FOR CYBER SAFETY TIPS, VISIT EAGLEBANKCORP.COM/SECURITY.**

## Small Business Checking

| Account number | | Beginning balance | $300,922.14 |
|---|---|---|---|
| Low balance | $72,713.54 | Total additions | 3,621,179.94 |
| Average balance | $508,054.91 | Total subtractions | 2,065,964.85 |
| Avg collected balance | $508,054 | Ending balance | $1,856,137.23 |

LEWIS-PRICE & ASSOCIATES INC
April 30, 2020

Page 11 of 11

| Date | Description | Additions |
|---|---|---|
| 04-28 | ' Preauthorized Credit ACTION CAPITAL CUSTOMER 200428 LEW | 53,992.71 |
| 04-29 | ' Credit Memo LOAN PROCEEDS 9400008108-82001 | 1,676,512.00 |

[Bank Statement Demonstrating Receipt of PPP Funds and Revenue Surplus]

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

112.    At the outset of the COVID-19 pandemic, Lewis-Price transitioned all overhead employees to a work remote environment. All Lewis-Price employees continued to work throughout the COVID-19 lockdown.

113.    Lewis-Price suffered no financial impact due to the COVID-19 pandemic and lockdown, as Lewis-Price only has government contracts, which were billable at the same rate during the lockdown as they were previously. All employees could complete the work defined in the Statements of Work for these contracts from home, and the government did not cancel any contracts during the lockdown.

114.    Lewis-Price suffered no loss of revenue due to the COVID-19 pandemic and lockdown.

115.    Lewis-Price did not terminate any employees during the COVID-19 pandemic and lockdown.

116.    Lewis-Price maintained all employees' salaries at pre-existing levels during the COVID-19 pandemic and lockdown.

117.    Once it received its PPP loan, Lewis-Price deposited the loan amount into the company account.

118.    As a result of the deposit into the sole company account, the PPP loan money was commingled with other revenue.

119.    Lewis-Price filed a PPP loan forgiveness application on or about June 30, 2020.

120.    Ken Coleman signed Lewis-Price's PPP loan forgiveness application.

121.    On its PPP loan forgiveness application, Lewis-Price stated that it used $1,638,728 from the loan on payroll expenses and $33,084 on rent or lease payments.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

18

122. Lewis-Price requested full PPP loan forgiveness from the SBA.



| **Paycheck Protection Program** | | |
|---|---|---|
| **Loan Forgiveness Application** | | |

**OMB Control Number 3245-0407**
**Expiration Date: 10/31/2020**

**PPP Loan Forgiveness Calculation Form**

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable | |
|---|---|---|
| Lewis-Price & Associates, Inc. | | |
| **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 8200 Greensboro Drive, Suite 805, McLean, VA 22102 | 20-0376788 | (703) 727 _ 9182 |
| | **Primary Contact** | **E-mail Address** |
| | Ken Coleman | kcoleman@lewisprice.com |

**SBA PPP Loan Number:** 4257017208   **Lender PPP Loan Number:** _____

**PPP Loan Amount:** 1,676,512   **PPP Loan Disbursement Date:** 04/29/2020

**Employees at Time of Loan Application:** 115

**Employees at Time of Forgiveness Application:** 114

**EIDL Advance Amount:** _____   **EIDL Application Number:** _____

**Payroll Schedule:** The frequency with which payroll is paid to employees is:

☐ **Weekly**   ☐ **Biweekly (every other week)**   ☐ **Twice a month**   ☐ **Monthly**   ⦿ **Other** semi-monthly

**Covered Period:** 04/29/2020 __ to __ 06/24/2020

**Alternative Payroll Covered Period, if applicable:** _____ to _____

If Borrower (together with affiliates, if applicable) received PPP loans in excess of $2 million, check here: ☐

**Forgiveness Amount Calculation:**

**Payroll and Nonpayroll Costs**
Line 1. Payroll Costs (enter the amount from PPP Schedule A, line 10):   **1,638,728**

Line 2. Business Mortgage Interest Payments:

Line 3. Business Rent or Lease Payments::   **33,084**

Line 4. Business Utility Payments:

**Adjustments for Full-Time Equivalency (FTE) and Salary/Hourly Wage Reductions**
Line 5. Total Salary/Hourly Wage Reduction (enter the amount from PPP Schedule A, line 3):   **0**

Line 6. Add the amounts on lines 1, 2, 3, and 4, then subtract the amount entered in line 5:   **1,671,812**

Line 7. FTE Reduction Quotient (enter the number from PPP Schedule A, line 13):   **1**

**Potential Forgiveness Amounts**
Line 8. Modified Total (multiply line 6 by line 7):   **1,671,812**

Line 9. PPP Loan Amount:   **1,676,512**

Line 10. Payroll Cost 75% Requirement (divide line 1 by 0.75):   **2,184,971**

**Forgiveness Amount**
Line 11. Forgiveness Amount (enter the smallest of lines 8, 9, and 10):   **1,671,812**

SBA Form 3508 (05/20)
Page 3

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

[Lewis-Price's PPP Loan Forgiveness Application]



| **Paycheck Protection Program** | OMB Control Number 3245-0407 |
| **Loan Forgiveness Application** | Expiration Date: 10/31/2020 |

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**

The authorized representative of the Borrower certifies to all of the below by initialing next to each one.

 KC

The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- does not include nonpayroll costs in excess of 25% of the amount requested; and
- does not exceed eight weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

KC

I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

KC

The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

KC

I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, and business utility payments.

KC

The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

KC

The tax documents I have submitted to the Lender are consistent with those the Borrower has submitted/will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

KC

I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

_____        06/30/2020
Signature of Authorized Representative of Borrower        Date

Ken Coleman        President/CEO
Print Name        Title

SBA Form 3508 (05/20)
Page 4

[Lewis-Price's PPP Loan Forgiveness Application]

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

123.    To Relator Rice's knowledge, Lewis-Price received full forgiveness for its PPP loan.

124.    Lewis-Price and Ken Coleman took intentional steps to defraud the United States government when Lewis-Price applied for the PPP loan.

125.    Lewis-Price and Ken Coleman took intentional steps to defraud the United States government when Lewis-Price applied for full PPP loan forgiveness.

126.    Lewis-Price and Ken Coleman defrauded the United States government of approximately $1,671,812.

**COUNT I**
**Violation of The False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**
**Knowingly Submitting False Claims for Payment**
**(Against All Defendants)**

127.    Rice incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

128.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

129.    Defendants knowingly presented or caused to be presented false claims when they falsely certified that "current economic uncertainty ma[de] [the PPP] loan request necessary to support the ongoing operations of [Lewis-Price]."

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

21

130.    Defendants knowingly presented or caused to be presented false claims when they improperly included payroll expenses on Lewis-Price's PPP application for individuals who were not Lewis-Price employees.

131.    Set forth more fully above, Rice has identified the specific scheme whereby Defendants falsely certified that Lewis-Price needed a PPP loan in order to support Lewis-Price's ongoing operations, and whereby Defendants improperly claimed employees on Lewis-Price's PPP application for individuals who were not employees.

132.    The false claims for payment were material to the government's decision to pay.

133.    But for Defendants' submission of these false claims, the Small Business Administration would not have issued Lewis-Price a PPP loan, nor would it have issued Lewis-Price full forgiveness of the loan.

134.    The United States of America has been damaged by the aforementioned misrepresentations and failures to comply with requisite laws and regulations in a dollar amount estimated to be in approximately $1,671,812.

135.    Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty of $11,181 – $22,363 per false claim.

## COUNT II
### Violation of The False Claims Act
### 31 U.S.C. § 3729(a)(1)(B)
### Knowingly Making False Records and Statements Material to a False Claim
### (Against All Defendants)

136.    Rice incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

137.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim submitted to get a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

138.    Defendants knowingly made or caused to be made false records or statements material to a false claim when they improperly included payroll expenses on Lewis-Price's PPP application for individuals who were not Lewis-Price employees.

139.    As set forth more fully above, Defendants improperly maintain individuals on payroll who are not employees, and Defendants mismanage corporate finances; even accounting for their mismanagement, Lewis-Price still did not need a PPP loan in order to support Lewis-Price's ongoing operations.

140.    The false records or statements Defendants made were used to support false claims Defendants submitted to the Small Business Administration in violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B), and have cost the United States government and taxpayers an amount estimated to be approximately $1,671,812.

141.    Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty of $11,181 – $22,363 per claim.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

23

## COUNT III
### Violation of The False Claims Act
### 31 U.S.C. § 3729(a)(1)(G)
### Knowingly Making False Records and Statements Material to a False Claim
### (Against All Defendants)

142.    Rice incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

143.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the government. 31 U.S.C. § 3729(a)(1)(B).

144.    Defendants knowingly concealed and knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the government when they improperly certified that Lewis-Price used $1,671,812 of the PPP funds on qualifying payroll and non-payroll business expenses in order to secure full loan forgiveness of the $1,671,812.

145.    Accordingly, the United States government is entitled to recover three times the amount of the damages the government sustains and a civil monetary penalty of $11,181 – $22,363 per claim.

### PRAYER FOR RELIEF

WHEREFORE, Relator Trevor Rice, acting on behalf of and in the name of the United States of America, and on his own behalf, prays that judgment will be entered against Defendants for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* as follows:

a) That for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, this Court enter

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

Judgment against the Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of the Defendants' actions, plus a civil penalty of between $11,181 – $22,363 for each action in violation of 31 U.S.C. § 3729;

b) That Relator Rice be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d), including the costs and expenses of this action and reasonable attorneys' fees;

c) That a trial by jury be held on all issues;

d) That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

e) That, in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

f) That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

g) That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

h) That the United States and the Relator be awarded prejudgment and post judgment interest; and

i) That the United States Government and Relator Rice receive all other relief, both in law and equity, to which they may reasonably be entitled.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

25

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules

of this Court, the Relator demands a jury trial as to all issues so triable.

Respectfully Submitted,

Janet Quinn (Bar No. 89503)
R. Scott Oswald (Bar No. 41770)
The Employment Law Group, P.C.
jquinn@employmentlawgroup.com
soswald@employmentlawgroup.com
888 17th Street, NW, Suite 900
Washington, DC 20006
Telephone: (202) 331-2813
Facsimile: (202) 261-2835
*Counsel for Plaintiff-Relator*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Trevor Rice v. Lewis-Price & Associates, et al.*

26